Weart v. Hoagland's Administrator.

---

## WEART v. HOAGLAND'S ADMINISTRATOR.

1. Under the common counts, if services rendered and goods furnished have been proved sufficient to raise an implied assumpsit, a special agreement may be given in evidence to fix the price stipulated; but such price must be in money, and such evidence cannot be admitted under the common counts where the contract was for payment in anything else, as by a bond or note of a third party.

2. A special contract to give a certain sum or a specific article for uncertain services which may greatly exceed or fall short of the value of the consideration, cannot be given in evidence under a *quantum meruit* count, which claims to recover according to the value.

3. Where a contract has been declared void by a decree in chancery, between the same parties, it cannot be given in evidence in a suit at law.

This matter came up on a rule to show cause why the verdict rendered for the plaintiff should not be set aside, and a new trial granted.

Argued by *Hamilton* and *Vroom*, for the rule, and by *Field* against it, before the CHIEF JUSTICE and Justices NEVIUS and OGDEN.

NEVIUS, J.   This is an action on the case, brought by the plaintiff to recover from the defendants, administrators of Betsey Hoagland, for board, nursing, attendance, and necessaries found and provided by her for the deceased, during the latter part of her life. The declaration contains only the common counts. The verdict was for $1250, which the defendants insist is exorbitant and excessive, and was produced by the admission of illegal evidence at the trial and the misdirection of the judge in his charge to the jury. The case furnished us shows that the deceased was an aged and infirm widow, and came to reside with the plaintiff on the 27th of October, 1842, and continued to live with her until the 22d of July, 1844, when she died. During that period, she was provided with all necessary board, nursing, and attendance by the plaintiff, which, according to the highest estimate of any of the witnesses, did not exceed in value $500. At the trial, the plaintiff offered to prove, and was permitted to prove, notwithstanding objection made, " that at the time the deceased came to reside with her, she (deceased) had a claim against her step-son, on account of her dower right, amounting to $1700, which had been secured by a promissory note, which had been lost or stolen, and about the payment of which some difficulty had arisen ; that shortly after this, the deceased proposed to the plaintiff to give her that claim in full compensation for her maintenance and support, and nursing and attendance, as long as she lived ; that subsequently this claim was adjusted by a bond, given by one Isaac Rowe to the deceased, for $1500, and that the deceased then offered to the plaintiff to give her this bond in consideration of such maintenance and attendance during her life, and that the plaintiff had agreed to accept, and did accept, such offer.

The plaintiff further offered to prove, and by permission of the court did prove, that the said bond of Rowe came to the hands of the plaintiff after the decease of the testatrix ; but, on a bill of interpleader, filed by the obligor of said bond, she was decreed to deliver up the same to the defendants, as administrators, to be by them disposed of in due course of administration.

The reasons urged in support of a new trial are—that, under the pleadings in the cause, the foregoing evidence ought not to have been admitted, and that the court erred in charging the jury, " that they might take it into consideration with the other evidence, to enable them to say how much the plaintiff merited for her services."

I think the court erred in admitting the evidence of the special contract under the general *indebitatus assumpsit* counts, and also in its instructions to the jury, as to the effect of the evidence. I admit the general principle, that where the terms of a special contract have been fully performed by one of the parties, a duty is raised, for which *indebitatus assumpsit* will lie, (4 *Cow*. 566) and that the plaintiff may avail himself of an agreement not under seal to ascertain the measure of damages he is entitled to recover, (7 *Wend*. 109) and that, in certain cases, it is not necessary to declare on the special contract, but the stipulated price under such contract may be recovered under a *quantum meruit* count. 7 *Cranch*. 303 ; 1 *Wil*. 117 ; 4 *Bos. & Pul*. 351. But in all these cases the price stipulated to be paid by the contract must be in money, and not in any other thing. If it be in any thing else, as a chattel or chose in action, the remedy is upon the special contract, for the damages in such case would be the value of the consideration withheld, and that value would be the material issue raised, and tried without being fairly presented by the pleadings. The case before us is not, therefore, within these acknowledged and well settled rules. The first special contrac' proved was, that the plaintiff should have for her services, board, and attendance, furnished to the deceased, the debt or claim which the latter held against her son-in-law, the principal evidence of which, *to wit*, the note, was lost. This claim,

therefore, and for many other reasons, may have been of very uncertain value; it may have been worthless, or it may have been worth the nominal amount. This claim being afterwards secured by the bond of Rowe, the contract seems to have been changed, and this bond became the consideration of the services to be rendered. This did not change the character or the legal aspect of the first special contract, for the bond of Rowe might have been of as uncertain and doubtful value as the original claim against the son-in-law. The special contract offered in evidence, if valid in its inception, remained in force when the suit was brought; it had never been rescinded by the testatrix in her lifetime, by a refusal on her part to perform it, for, by its very terms, it was to be executed after her death by her representatives, and on the full performance by the plaintiff of her part. It is not such a contract as could legally be given in evidence in support of an *indebitatus assumpsit*, either for the purpose of ascertaining the quantum of damages or for any other purpose, and if the plaintiff intended to avail herself of the benefit of it, she should have declared upon it as a subsisting contract. Again, if this contract was lawful evidence, it was conclusive as to the amount of damages to be awarded, and all other evidence, as to the value of the services rendered, was unnecessary and improper. 7 *Wend.* 109. Another and fatal objection to the admission of the evidence is, that it is not adapted to the *quantum meruit* count, which claims a return according to the true worth of the services rendered. This contract was speculative; the testatrix might have died the day after it was made, and in that case, if the bond was worth its face, it would have greatly exceeded the value of the services, and the plaintiff's right to recover would rest wholly on the contract; or she might have lived twenty years, and in that case the defendants might have set up the contract as a defence in an action on a *quantum meruit*. I deem it unnecessary to advert to the decree in chancery, further than to remark, that if by that decree this special contract was declared void, then it was clearly improperly received in evidence. If such was not the object of the decree, then the evidence was unlawfully received, according

to the premises above stated. I think the verdict ought to be set aside, and a new trial granted; but am willing that the plaintiff should have liberty to amend her declaration, by adding a count on the special contract, on paying the cost of such amendment.

The CHIEF JUSTICE and Justice OGDEN concurred in setting aside the verdict.

Rule absolute.